UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| RICHARD MINITER, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 09-2330 (RMU) |
| | : | | |
| v. | : | Re Document Nos.: | 4, 10, 15 |
| | : | | |
| SUN MYUNG MOON *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

GRANTING JENKINS AND SLEVIN'S MOTION TO DISMISS;
DENYING THE WASHINGTON TIMES' MOTION TO DISMISS COUNTS ONE AND TWO OF THE
COMPLAINT; DENYING WITHOUT PREJUDICE THE WASHINGTON TIMES'S MOTION IN THE
ALTERNATIVE FOR SUMMARY JUDGMENT; DENYING AS MOOT JENKINS AND SLEVIN'S
MOTION FOR AN EXTENSION OF TIME TO FILE A REPLY

**I. INTRODUCTION**

This matter comes before the court on the motion to dismiss filed by defendants Sonya Jenkins and Jonathan Slevin's and defendant the Washington Times, LLC's ("the Washington Times" or "the Times") motion to dismiss counts one and two of the complaint or in the alternative for summary judgment. The motions to dismiss are filed pursuant to Federal Rule of Civil Procedure 12(b)(6) and allege that the plaintiff failed to state a claim for which relief can be granted. For the reasons discussed below, the court grants Jenkins and Slevin's motion to dismiss, denies the Washington Times's motion to dismiss count one of the complaint, grants the Washington Times's motion to dismiss count two of the complaint and denies without prejudice the Washington Times's motion for summary judgment.[1]

---

[1] Because the court does not rely on the arguments made in Jenkins and Slevin's late-filed reply, it denies as moot their motion for leave to late file.

## II. FACTUAL & PROCEDURAL BACKGROUND[2]

In October 2008 the plaintiff began working for the Washington Times as a consultant to the Times's former President and Publisher, Thomas McDevitt. Compl. ¶¶ 18, 23. During the term of the plaintiff's employment as a consultant the newspaper began the process of hiring an Editorial Page Editor. *Id.* ¶ 41. The plaintiff applied for the position and proceeded through the Times's hiring process, which included interviews with McDevitt and defendant Sonya Jenkins, the Times's Vice President of Human Resources. *Id.* ¶¶ 43-44.

In February 2009, the plaintiff was hired by the Times as the Editorial Page Editor and Vice President of Opinion. *Id.* ¶ 45. The Times added the plaintiff's name to the newspaper's masthead and published a front-page article announcing his hiring, *id.* ¶¶ 47, 50. The Times paid the plaintiff an annual salary of $225,000, a $5,000 signing bonus and other benefits. *Id.* ¶¶ 46, 49.

During the spring of 2009, Jenkins approached the plaintiff on several occasions and asked him to sign a document attesting that Jenkins's son resided at the plaintiff's address so that her son could continue to attend an elementary school in the county in which the plaintiff resided. *Id.* ¶ 55. The plaintiff rejected each request, but alleges that Jenkins's persistence caused him "emotional and physical distress, including chest pain, headaches and back and stomach pain."[3] *Id.* Moreover, the plaintiff feared retaliation for refusing Jenkins's persistent requests. *Id.*

---

[2] For the purposes of ruling on this motion, the court assumes the truth of the plaintiff's allegations. *See Atherton v. D.C. Office of the Mayor*, 567 F.3d 673, 681 (D.C. Cir. 2009) (observing that "[w]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint" (quoting *Erickson v. Pardus,* 551 U.S. 89, 94 (2007))).

[3] Shortly after being named Editorial Page Editor, the plaintiff suffered severe chest pain while at work. Compl. ¶ 53. He was hospitalized for more than five days and his condition was diagnosed as "heart-related." *Id.*

In June 2009, Jenkins informed the plaintiff that she had found someone else to sign the form. *Id.* ¶ 57. Shortly thereafter, Jenkins began an investigation into the plaintiff's "management style." *Id*. ¶ 58. The plaintiff states that even though the initial investigation produced largely favorable results, Jenkins launched a second investigation without cause and, together with McDevitt, ordered the plaintiff to work from home. *Id*. ¶¶ 59-60, 62. The plaintiff was instructed not to contact any of the employees in his department during his absence. *Id*. ¶¶ 60, 62.

In early September 2009, Jenkins contacted the plaintiff and proposed a new employment contract that would alter the plaintiff's responsibilities and lower his pay substantially while he worked from home. *Id*. ¶ 66. On September 22, 2009, Jenkins notified the plaintiff that if he did not agree to the new contract, the Times would stop paying his salary. *Id*. ¶ 67. The plaintiff did not agree to the new contract, and the Times stopped paying him effective September 22, 2009. *Id*. ¶¶ 67-68. The Times, however, left the plaintiff's name on the newspaper's masthead until November 23, 2009. *Id*. ¶ 68.

On December 8, 2009, the plaintiff filed suit alleging breach of contract, promissory estoppel, intentional infliction of emotional distress ("IIED"), false light, unfair trade practices and violations of the Lanham Act, 28 U.S.C. §§ 1125 *et seq*. The plaintiff named the following individuals and entities as defendants: Sun Myung Moon; Unification Church International; News World Communications, LLC of Delaware; News World Communications, Inc.; One Up Enterprises, Inc.; Preston Moon; the Washington Times; Beth Wolffe and the Wolffe Law Firm;

Jonathan Slevin[4]; and Sonya Jenkins. *Id*. ¶¶ 4, 6-9.[5]

On December 15, 2009, defendants Jenkins, Slevin, Wolffe and the Wolffe Law Firm filed a motion to dismiss. Mot. to Dismiss Pl.'s Claims Against the Individual Defs. and the Wolffe Law Firm ("Defs.' Mot."). On December 30, 2009, defendant the Washington Times filed a motion to dismiss counts one and two of the complaint or, alternatively, for summary judgment on those counts.[6] Def. Washington Times's Mot. to Dismiss ("Times's Mot.").

The plaintiff subsequently filed "Notices of Voluntary Dismissal of Certain Defendants," dismissing without prejudice his claims against Sun Myung Moon, Preston Moon, Unification Church International, One Up Enterprises, News World Communications, LLC of Delaware, News World Communications, Inc., Beth Wolffe and the Wolffe Law Firm.[7] *See generally* Pl.'s

---

[4] Slevin is the Acting President and Publisher of the Times. Compl. ¶ 7.

[5] Together with his complaint, the plaintiff filed a motion for a preliminary injunction, *see generally* Pl.'s Mot. For Prelim. Inj., which the court denied on February 16, 2010, *see generally* Mem. Op. (Feb. 16, 2010).

[6] Count one of the complaint alleges breach of contract, Compl. ¶¶ 82-83; count two alleges promissory estoppel, *id*. ¶¶ 84-86.

[7] Defendants Wolffe and the Wolffe Law Firm assert that the plaintiff's notices of voluntary dismissal are invalid because the plaintiff did not comply with Federal Rule of Civil Procedure 41(a). *See* Defs.' Notice of Invalid Voluntary Dismissal at 1-2. Rule 41(a) provides in pertinent party that a "plaintiff may dismiss an action without a court order by filing: (i) a notice of dismissal before the opposing party serves either an answer or motion for summary judgment; or (ii) a stipulation of dismissal signed by all parties who have appeared." FED. R. CIV. P. 41(a)(1)(A). In the present case, none of the defendants the plaintiff purports to dismiss has filed an answer or motion for summary judgment. Therefore, the plaintiff properly dismissed his claims against these defendants pursuant to Rule 41(a)(1)(A)(i). *See Smith v. Potter*, 513 F.3d 781, 783 (7th Cir. 2008) (holding that the district court had erred in dismissing the plaintiff's claims with prejudice after the plaintiff had filed a notice of dismissal pursuant to Rule 41(a)(1)(A)(i)); *Pedrina v. Chun*, 987 F. 2d 608, 610 (9th Cir. 1993) (explaining that the district court had no authority to grant a defendant's motion to dismiss with prejudice even if it was filed prior to the plaintiff's Rule 41(a)(1)(A)(i) notice of dismissal); *Am. Cyanamid Co. v. McGhee*, 317 F.2d 295, 297 (5th Cir. 1963) (stating that once the plaintiff has filed a notice of voluntary dismissal pursuant to Rule 41(a)(1)(A)(i), "[t]here is nothing the defendant can do to fan the ashes of that action into life and the court has no role to play"). Accordingly, the court treats defendants Wolffe, the Wolffe Law Firm, Jenkins and Slevin's motion to dismiss as applying only to defendants Jenkins and Slevin.

Notices of Voluntary Dismissal. With the issues fully briefed, the court now turns to the applicable legal standards and the parties' arguments.

### III. ANALYSIS

#### A. Legal Standard For 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing Fed. R. Civ. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." *Conley*, 355 U.S. at 47-48 (internal quotation marks omitted). It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14 (2002), or "plead law or match facts to every element of a legal theory," *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

Yet, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (abrogating the oft-quoted language from *Conley*, 355 U.S. at 45-46, instructing courts not to dismiss for failure to state a claim unless it appears beyond doubt that "no set of facts in support of his claim [] would entitle him to relief"). A claim is facially plausible when

5

the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556).

In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning*, 292 F.3d at 242. While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004); *Browning*, 292 F.3d at 242. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

### B. The Court Grants Defendants Jenkins and Slevin's Motion to Dismiss

Both Jenkins and Slevin argue that they cannot be held liable for any breach of contract committed by the Washington Times because they never assumed such liability. Defs.' Mot. at 6. Moreover, Slevin asserts that the plaintiff does not allege "any specific action or conduct [on his part] relating to Plaintiff's alleged employment contract, nor to any of his five other Counts." *Id*. The plaintiff responds by withdrawing his breach of contract and promissory estoppel claims against Jenkins and Slevin and indicating that he only intends to proceed with his IIED, false light, unfair trade practices and Lanham Act claims against those defendants. Pl.'s Opp'n to Defs.' Mot. at 2. The plaintiff alleges that Jenkins and Slevin personally committed torts against him for which they are personally liable. *Id*. The plaintiff does not, however, specify which

claims apply to which defendant,[8] nor does he discuss the underlying conduct of any defendant as it specifically applies to any claim. *See generally id.*; Compl.

### 1. Defendant Slevin

The plaintiff mentions Slevin only twice in his complaint, once noting that Slevin is the "Acting President and Publisher of Defendant Times," Compl. ¶ 7, and again referring to Slevin's announcement that the Times would be cutting its newspaper circulation and reducing its operating revenue, *id.* ¶ 79. The plaintiff does not mention Slevin by name once in his opposition. *See generally* Pl.'s Opp'n to Defs.' Mot. The closest the plaintiff comes to making a specific allegation against Slevin is the assertion in his opposition that "the moving Defendants are alleged to have participated directly in the torts pleaded in the complaint as they all acted in concert, conspired and aided and abetted to tortiously harm the Plaintiff." Pl.'s Opp'n to Defs.' Mot. at 2.

A complaint is insufficient "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). Here, the plaintiff has offered no information or factual allegations setting forth the basis of Slevin's purported liability to the plaintiff. *See generally* Compl.; Pl.'s Opp'n to Defs.' Mot. Thus, even accepting as true all of the plaintiff's allegations, the complaint still lacks sufficient "factual content that [would] allow[] the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949; *see also Sieverding v. U.S. Dep't of Justice*, 693 F. Supp. 2d 93 at 110 (D.D.C. 2010) (granting the defendant's motion to dismiss because the plaintiff "offer[ed] no factual allegations to support [her] vague claim of collusion"); *Smith v. Dist. of Columbia*, 674 F. Supp. 2d 209, 214 (D.D.C. 2009) (explaining that where the

---

[8] Indeed, in his complaint, the plaintiff brings every claim against every defendant, sometimes to the point of contradiction. *See, e.g.*, Compl. ¶ 97 (claiming that "[d]efendants, *each and every one of them*, misused Plaintiff's name on *its* masthead") (emphasis added).

"complaint, and indeed the entire record, is devoid of any facts or allegations that the District of Columbia knew or should of known about [the decedent's] mistreatment" the complaint must be dismissed); *Ekwem v. Fenty*, 666 F. Supp. 2d 71, 79 (D.D.C. 2009) (acknowledging that although the plaintiff's evidence is "potentially consistent with defendants' liability" it "stops short of the line between possibility and plausibility of entitlement to relief" (*quoting Iqbal*, 129 S. Ct. at 1949)). Accordingly, the court grants Slevin's motion to dismiss by dismissing all claims against that defendant.

### 2. Defendant Jenkins

#### a. Count Three – IIED

With respect to Jenkins, the plaintiff alleges that she "repeatedly demanded that [he] sign a government document attesting that her young son lived at [the plaintiff's] house." Compl. ¶ 55. Despite the plaintiff's rejections, Jenkins continued asking the plaintiff sign the document. *Id*. "This caused [the plaintiff] additional emotional and physical distress, including chest pain, headaches, and back and stomach pain." *Id*. According to the plaintiff, Jenkins was aware that he had previously suffered from severe chest pains, which had been diagnosed as "heart-related." *Id*. ¶ 53-54. The plaintiff also asserts that in retaliation for refusing to sign the document, Jenkins "used her power as Vice President of Human Resources to start an investigation into [the plaintiff's] management style." *Id*. ¶ 58; *see also id.* ¶ 60. Jenkins argues that this alleged conduct is not "outrageous and extreme" enough to support the plaintiff's claim. Defs.' Mot. at 3-4.

To succeed on his IIED claim against Jenkins, the plaintiff must show "(1) extreme and outrageous conduct on the part of [Jenkins] which (2) intentionally or recklessly (3) cause[d] the plaintiff severe emotional distress." *Khan v. Parsons Global Servs. Ltd.*, 521 F.3d 421, 428

(D.C. Cir. 2008) (citing *Darrow v. Dillingham & Murphy, LLP*, 902 A.2d 135, 139 (D.C. 2006)). "To establish 'outrageousness,' the plaintiff must prove that Jenkins's conduct was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Pitt v. Dist. of Columbia*, 491 F.3d 494, 506 (D.C. Cir. 2007) (quoting *Joyner v. Sibley Mem. Hosp.*, 826 A.2d 362, 373 (D.C. 2003)).

The plaintiffs allegations that Jenkins harassed him about signing a document for her son's school despite knowing about his heart trouble and that she used her position to retaliate against him for his refusal to sign the form, do not rise to the level of outrageous conduct sufficient to sustain an IIED claim. *See e.g.*, *Grandison v. Wackenhut Servs., Inc.*, 514 F. Supp. 2d 12, 18 (D.D.C. 2007) (holding that the plaintiff's conclusory allegation that the defendant's actions were "extreme and outrageous and willfully performed [and] caused severe emotional distress" to the plaintiff was "insufficient to meet Rule 8's pleading requirements" even where the plaintiff had alleged that he had experienced specific acts of psychological and physical harassment by his co-workers and supervisors); *Tiefenbacher v. Am. Ass'n of Retired People*, 2006 WL 1126841, at *1 (D.D.C. Apr. 27, 2006) (explaining that allegations of workplace harassment and retaliation resulting in the plaintiff's termination without an exit interview, severance or vacation was not sufficiently outrageous conduct to sustain an IIED claim); *Williams v. Fed. Nat'l Mortg. Ass'n*, 2006 WL 1774252, at *9 (D.D.C. June 26, 2006) (dismissing the plaintiff's IIED claim because her contention that the "defendant refused to contract with her because of her race and engaged in a campaign to prevent others from doing business with her" did not allege sufficiently outrageous conduct); *Duncan*, 702 A.2d at 212 (ruling that forcing the plaintiff to work in an area where she was exposed to radiation while

pregnant did not qualify as sufficiently outrageous conduct to support an IIED claim); *Kerrigan v. Britches of Georgetowne, Inc.*, 705 A.2d 624, 628 (D.C. 1997) (holding that "target[ing] [the plaintiff] for a sexual harassment investigation, manufactur[ing] evidence against [the plaintiff] in order to establish a false claim of sexual harassment, leak[ing] information from the investigation to other employees, and unjustifiably demot[ing] [the plaintiff] to the position of store manager in order to promote a woman to his position" was an "employer-employee conflict" that did not qualify as "extreme and outrageous" conduct sufficient to maintain an IIED claim); *cf. Morton v. Dist. of Columbia Housing Auth.*, 2010 WL 2628649, at *7 (D.D.C. July 1, 2010) (determining that a plaintiff who had alleged that the defendant took no action despite knowing that her apartment had no thermostat and that vermin were eating her son's feeding tube, depriving him of essential nutrition, had adequately stated an IIED claim); *Amons v. Dist. of Columbia*, 231 F. Supp. 2d 109, 118 (D.D.C. 2002) (ruling that the plaintiff's allegations that "police officers unlawfully entered and searched his home without justification, . . . killed his pet dog in his home[,] . . . detained him for twenty-two hours . . . [and] failed to secure his home after his arrest causing the loss of his property valued in excess of $6,000" were sufficient to sustain his IIED claim). Accordingly, the court concludes that the plaintiff has failed to sufficiently plead the first element of his IIED claim and as a result, that claim against Jenkins fails.

### b. Counts Four Through Six –
### False Light, Unfair Trade Practices and Violations of the Lanham Act

With respect to his false light claim, the plaintiff contends that during the time he was ordered to work from home, "media reports from Politico.com and other outlets held [the plaintiff] up for ridicule and humiliated him for being 'AWOL' from his job." Compl. ¶ 69. The plaintiff asserts that these media outlets received their information from "Times insiders," *id.*,

and "Times employees," *id.* ¶ 70. The plaintiff does not, however, identify any "insider" or employee responsible for this conduct. *See generally* Compl. Similarly, the plaintiff does not identify specific defendants in pleading his unfair trade practices and Lanham Act claims. *Id.* ¶¶ 93-98.

The plaintiff has offered no allegation, contention or implication that Jenkins, the Vice President of Human Resources for the Washington Times, would be responsible for the conduct resulting in the plaintiff's alleged injuries for these claims. *See generally* Compl.; Pl.'s Opp'n to Defs.' Mot. That is, the plaintiff has not alleged that Jenkins had knowledge of or involvement in leaking offensive information about him to other news sources or that she had anything to do with or is otherwise responsible for the appearance of his name on the masthead of the newspaper. *See Jankovic v. Int'l Crisis Group*, 494 F.3d 1080, 1092 (D.C. Cir. 2007) (acknowledging the requirement that a plaintiff plead that the defendant "had knowledge of or acted in reckless disregard as to the falsity of the publicized matter" to state a false light claim); *Alicke v. MCI Commc'ns Corp.*, 111 F.3d 909, 912 (D.C. Cir. 1997) (explaining that "to state a claim based on an unfair trade practice, the plaintiff must allege that the defendant made a material misrepresentation or omission that has a tendency to mislead") (citing D.C. CODE § 28-3904(e)-(f)); 15 U.S.C. § 1125 (providing for civil liability under the Lanham Act for "any person who . . . uses in commerce any . . . name, . . . or any . . . false or misleading representation of fact, which is likely to cause confusion . . . as to the affiliation . . . of such person with another person"). Because the plaintiff has provided no allegation demonstrating the "facial plausibility" of his false light, unfair trade practices or Lanham Act claims against Jenkins, the court dismisses these claims. *Iqbal*, 129 S. Ct. at 1949.

### 3. The Court Denies the Washington Times's
### Motion to Dismiss Counts One and Two of the Plaintiff's Complaint

#### a. Count One – Breach of Contract

The plaintiff alleges that he had an employment contract with the Times pursuant to which "he would receive the titles of Editorial Page Editor and Vice President of Opinion with a salary of $225,000.00 per year plus a $5,000.00 signing bonus." Compl. ¶ 46. Less clearly, the plaintiff states that he "was *offered* a package of benefits including health coverage, dental coverage, health-club membership, an executive-retirement plan, paid vacation and other leave, and other substantial benefits." *Id.* (emphasis added). The plaintiff concedes that, at least until September 22, 2010, he "was paid according to his contract, agreement and understanding and received all of the benefits it established." *Id.* ¶ 49. Not once in his complaint does the plaintiff mention the alleged duration of the contract or specify it was a written or oral contract. *See generally id.* Nevertheless, the plaintiff makes it clear in his opposition to the Times's motion that he believed he had a one-year employment contract. *See* Pl.'s Opp'n to Times's Mot. at 2; Pl.'s Aff. ¶ 3. The Washington Times acknowledges that it offered the plaintiff a one-year employment contract, but avers that instead of accepting the contract, the plaintiff made a counter-offer, which the Times never accepted. Times's Mot. at 5-6. In his opposition, the plaintiff appears to aver that the contract was oral and subject to modification, Pl.'s Opp'n to Times's Mot. at 2 (stating that "the paper had not put the terms in writing, but instead induced Plaintiff to begin work by telling him that these were the terms of his employment to a one-year contract, subject to any later modification that the two parties could agree upon"), but nonetheless maintains that there was a valid, enforceable contract, *id*.

To "state a breach of contract claim [a] [p]laintiff must allege the following elements: '(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3)

a breach of that duty; and (4) damages caused by the breach.'" *Mesumbe v. Howard Univ.*, 2010 WL 1539816, at *6 (D.D.C. Apr. 19, 2010) (citing *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009) (internal quotation marks removed)). The plaintiff has clearly alleged the existence of a valid contract. *See* Compl. ¶¶ 46, 49, 62-63, 67-68, 70, 82-83; *see generally* Pl.'s Opp'n to Times's Mot.; Pl.'s Aff. He has also alleged that his employment term was for one year and that the Times breached the contract by firing him before the expiration of his contract. Pl.'s Opp'n at 2-3. Finally, he has alleged that he suffered damages as a result of the Times's breach. Compl. ¶ 64, 83.

The court recognizes that "[t]he mere oral promise of fixed-term employment . . . 'is insufficient to rebut to presumption of at will employment.'" *Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 69-70 (D.D.C. 2005) (quoting *Willoughby v. Potomac Elec. Power. Co.*, 100 F3d. 999, 1001 (D.C. Cir. 1996)). Nevertheless, because the plaintiff has alleged that the contract was for a fixed employment term, Pl.'s Opp'n at 2, and the Washington Times admits that it anticipated entering into a fixed-term employment contract with the plaintiff, Times's Mot. at 6, the court determines that the plaintiff has successfully rebutted this presumption, *see Wilson v. Prudential Fin.*, 332 F. Supp 2d 83, 91 n.4 (D.D.C. 2004) (stating that "a plaintiff bears the burden of alleging facts sufficient to show that the parties intended that termination be subject to specific preconditions") (internal quotation omitted). Accordingly, the plaintiff's breach of contract allegations are sufficient to survive a motion to dismiss.

### b. Count Two – Promissory Estoppel

The Times argues that the plaintiff's promissory estoppel claim is too vague and that, even assuming the plaintiff could demonstrate that the alleged promises were made, no reasonable person could have relied on them. Times's Mot. at 12. The plaintiff asserts that the

Times induced him to begin work by promising him that he had a "one-year employment contract subject to any later modification that the two parties could agree upon" and that he relied on these promises in commencing his work for the Times. Pl.'s Opp'n to Times's Mot. at 2; *see also* Pl.'s Aff. ¶¶ 3, 5.

To adequately allege promissory estoppel, a plaintiff must plead "(1) the existence of a promise, (2) that the promise reasonably induced reliance on it, and (3) that the promisee relied on the promise to his detriment." *Osseiran v. Int'l Fin. Corp.*, 498 F. Supp. 2d 139, 147 (D.D.C. 2007) (citing *Daisley*, 372 F. Supp. 2d at 71). "Though a promise required for a promissory estoppel claim 'need not be as specific and definite as a contract, it must still be a promise with definite terms.'" *Vila v. Inter-Am. Inv., Corp.*, 570 F.3d 274, 287 (D.C. Cir. 2009) (quoting *In re U.S. Office Products Co. Sec. Litig.*, 251 F. Supp. 2d 77, 97 (D.D.C. 2003) (emphasis omitted).

Here, the plaintiff alleges that the Times promised him a fixed-term employment contract, that he relied on that promise in accepting the position and working for the newspaper and that he has suffered actual and compensatory damages as a result of this reliance. *Id*. ¶ 46, 48, 85. Specifically, the alleged promise upon which the plaintiff relied was for a one-year employment contract with a salary of $225,000, a signing bonus of $5,000 and "benefits including health coverage, dental coverage, health-club membership, an executive-retirement plan, paid vacation and other leave." Compl. ¶ 46. The Washington Times concedes that it made such an offer to the plaintiff and that, for some period of time, it compensated the plaintiff in accordance with those terms.[9] Times's Answer ¶ 46, 49. The plaintiff thus "believed his position to be secure and permanent and relied upon this in his endeavors at The Washington Times." Compl. ¶ 48. Because the plaintiff has made factual allegations supporting the elements

---

[9] The Times denies that the offer included a health club membership. Times's Answer ¶ 46.

of his promissory estoppel claim, the court denies the Times's motion to dismiss that claim. *See, e.g.*, *Parnigoni v. St. Columba's Nursery Sch.*, 681 F. Supp. 2d 1, 26 (D.D.C. 2010) (determining that the plaintiff's allegation that she relied to her detriment on her employer's oral promise to renew her contract was sufficient to sustain a promissory estoppel claim); *Osseiran*, 498 F. Supp 2d at 147-48 (holding that the plaintiff had stated a claim for promissory estoppel where he had pled that the defendant had promised to sell him shares of stock and that he reasonably relied on that promise to his detriment); *Knight v. Georgetown Univ.*, 725 A.2d 472, 485 (D.C. 1999) (affirming the trial court's determination that the plaintiff reasonably relied on her employer's promise that she would still have a job after a reorganization of her unit).

## IV. CONCLUSION

For the foregoing reasons, the court grants defendants Jenkins and Slevin's motion to dismiss, denies defendant the Washington Times's motion to dismiss, denies without prejudice the Washington Times's motion in the alternative for summary judgment and denies as moot Jenkins and Slevin's motion for leave to late file a reply. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 7th day of September, 2010.

RICARDO M. URBINA
United States District Judge